HAMLIN, Justice.
Certiorari was directed to the Court of Appeal, Third Circuit, for review of its judgment which affirmed the judgment of the trial court in favor of defendants, maintaining their exceptions of no right £Tf action and peremption and dismissing plaintiffs’ suit at their costs. 254 La. 3, *530 222 So.2d 63; 219 So.2d 545; Art. VII, Sec. 11, La.Const. of 1921.
Presented for our determination is the question vel non of divestiture of property-ownership through adjudication at tax sale.
Plaintiffs, as heirs of U. A. Guilbeau, filed these declaratory judgment proceedings (more ' or less a petitory action) against Jeanerette Lumber & Shingle Co., Ltd. and Shell Oil Company on May 10, 1963. They prayed that they be decreed the co-owners in indivisión with Jeanerette Lumber & Shingle Co., Ltd. (Hereinafter referred to as Jeanerette) of certain property located in St. Martin Parish[1] in the proportions of a one-third undivided interest to plaintiffs and a two-thirds undivided interest to defendants; as alleged co-owners, they prayed for possession along with Jeanerette; they further prayed for an accounting from Shell Oil Company and for judgment against it in the sum of $4,-250,000.0.0.
On November 2, 1966, after continuances, Jeanerette and Shell Oil Company filed exceptions of no right of action and peremption. They contended that any title of Ulger A. Guilbeau, or persons claiming through him, to a one-third interest in the properties herein involved was divested by a tax sale dated May 31, 1890 for delinquent taxes of 1889. Alternatively, Jeanerette urged that the right of anyone to attack the tax sale had been lost by virtue of the peremption and/or prescription provided in Art. X, Sec. 11, La.Const. of 1921, and, alternatively, that provided in Art. 233, La.Const. of 1913 and Art. 233, La. Const.-of 1898. Especially pleaded was the peremption of three and five years.
After hearing on the exceptions, the trial court rendered judgment, supra, on February 19, 1968. The Court of Appeal denied a motion to dismiss appeal. (214 So.2d 392) and thereafter rendered the judgment hereinafter reviewed
Plaintiffs contend that the Court of Appeal erred: (1) In holding that the adjudication to one of several joint owners of property adjudicated at a tax sale divests the other co-owners of their interests in the property; and (2) In holding that where property held in division is separately assessed on the tax rolls, one co-owner may purchase another co-owner’s interest in the undivided property for the non-payment of taxes and thereby completely and irrevocably divest the other co-owner of his interest in the subject property.
Defendants pray for an affirmance of the judgment of the Court of Appeal. Alternatively, Shell Oil Company urges that if the co-owner rule is held applicable, that *532 it be protected' under the well-established, third party rule.
The history of the subject property is in substance as follows:
April, 1881 — Four sales were made by the State of Louisiana to U. A. Guilbeau, H. P. Fournet, and A. V. Fleming in the proportions of one-third each.
April 13, 1881 — H. P.'Fournet sold his one-third interest to Jean Gerac and Romain Francez.
July 20, 1881 — A. V. Fleming sold his one-third interest to Jean Gerac and Romain Francez.
October 24, 1884 — U. A. Guilbeau died; his descendants inherited his one-third • interest.
January 22/ 1886 — Jean Gerac and Romain Francez sold their two-thirds interest to Bernard Milmo and John Stokoe.
January 30,’ 1888 — Bernard Milmo' and John Stokoe sold one-sixth ■ of-, their two-thirds interest to Harry B. Hewes.
May 31, 1890 — The one-third Guilbeau ' interest was sold for unpaid 1889 taxes to Milmo -Stockoe (Stokoe) § Co.[2]
1894 — Jeanerette came into existence. The Stokoe, Milmo, and Hewes interests in the entire property were thereafter .transferred to Jeanerette for shares of stock. . .
October '• 12, 1934 — Shell - Oil ■ Company executed an oil, gas, and mineral lease with Jeanerette covering - the entire property. ' ''
*534 Plaintiffs premised their cause of action on the grounds that they are the heirs of U. A. Guilbeau and despite the tax sale of 1890 are co-owners of the property, said tax sale operating as a payment of taxes for the benefit of all co-owners. (The attack on the tax sale was made in argument on the exceptions rather than in plaintiffs’ petitions.)
Defendants contended that Milmo, Stokoe & Company, ancestors in title of Jeanerette, acquired the two-thirds interest in the property in transactions entirely separate from Guilbeau and his heirs; that on the 1889 tax rolls of St. Martin Parish, Milmo, Stokoe & Co.’s two-thirds interest was assessed separately from the one-third Guilbeau interest.
In affirming the judgment of the trial court, the Court of Appeal stated:
“After an examination of the Boutwell and the Atlantic Refining Company cases, supra, we conclude that they are not in conflict. The undivided interests of the owners of the property in controversy were separately assessed, which, under Shaw v. Watson, supra, is the correct procedure since the fractional interests • owned by the parties were in unequal proportions.
“There was no obligation in the instant case on the part of the defendant, Jeanerette, to see that plaintiffs’ taxes were paid, or vice versa. We see no difference in Jeanerette buying the property at the 1890 tax sale as if it had been purchased by a third party owning no interest in the property prior to the tax sale.
“There is no allegation of fraud by defendant, Jeanerette, or that there was a fiduciary relation between it and plaintiffs, or that Jeanerette had agreed to pay the taxes for plaintiffs’ ancestors.
“We agree with the trial judge that the tax sale of 1890 is valid; and that the judgment of the district court maintaining the exception of no right of action and peremption is correct.”[3]
In this Court, there was a discussion as to whether or not the trial judge acted correctly in hearing evidence on the exceptions of no right of action and per *536 emption. Under Article 931[4] of the Code of Civil Procedure, we find that he acted properly.
After a- careful study of the record, the reasons for judgment of- the trial court, and the opinion of the Court of Appeal, we find that the judgment of the Court of Appeal is correct for reasons we shall state infra. However, we find no need for distinguishing the many cases cited and quoted by able counsel. This was aptly done by the trial court and the Court of Appeal. Since plaintiffs’ right to redeem the property is founded on equitable considerations, no hard and fast rule can be laid down. Each case must depend on its peculiar facts and circumstances. Keller v. Haas, 202 La. 486, 12 So.2d 238.
In Atlantic Refining Company v. Golson, 127 So.2d 341, 343, Certiorari Denied (1961), the Court of Appeal correctly stated:
“ * * * It is now the well settled law of our state that the adjudication to one of several joint owners of property adjudicated at a 'tax sale does not divest the other co-owners of their interest in the property. The tax sale only operates as a payment of the taxes for the joint benefit of all of the co-owners, with the right on the part of the adjudicatee to be reimbursed the amount he paid. * * * However, it has also been held that the right of the co-owners to become reinvested with title upon reimbursing the other co-owners of his share of the taxes is a right that must be exercised within a reasonable time, and if not exercised within such reasonable time, and third parties acquire an interest in the property on the strength of the recorded tax title without any knowledge of the equitable interest of the co-owners to become reinvested in his title, or reimbursing his co-owner for the taxes paid by him, such third person will be protected, and can plead the peremption provided for in Article 10, Section 11, of the Constitution against the attack on ' the tax sale. Cooper v. Edwards, 1922, 152 La. 23, 92 So. 721.” See, Keller v. Haas, 202 La. 486, 12 So.2d 238, 209 La. 343, 24 So.2d 610; Hake v. Lee, 106 La. 482, 31 So. 54; Jacobs v. Metcalfe, La.App., 185 So.2d 845; British American Oil Producing Company v. Grizzaffi, La.App., 135 So.2d 559; Muff v. Algermissen, *538 La.App., 198 So.2d 742; Welsh v. Lagasse, La.App., 128 So.2d 705; Robertson v. Grigsby, La.App., 41 So.2d 860; Murphy v. Murphy, 136 La. 17, 66 So. 382. Cf. Jones v. Jones, 240 La. 174, 121 So.2d 734; Wells v. Joseph, 234 La. 780, 101 So.2d 667; Ewald v. Hodges, 239 La. 883, 120 So.2d 465.
In speaking of assessments, this Court stated in Shaw v. Watson, 151 La. 893, 92 So. 375, (1922):
“When two or more persons own a tract of land jointly, and in equal proportions, it may be assessed for taxes as a whole, in the names of both or all of its owners. But, when two or more persons own a tract of land jointly, but in unequal proportions, the correct way to assess it for taxes is to assess each fractional part or proportion to its owner.” See, Howcott v. City of New Orleans, 107 La. 305, 31 So. 668.
In Russell v. Lang, 50 La.Ann. 36, 23 So. 113, this Court stated:
“There are two ways of legally assessing real property held by two or more parties in indivisión. One and the better way is to assess to each hi.s undivided interest; the other, to assess the property as belonging jointly to the parties, giving the name of each individual owner, followed by the description of the property.”
Finally, Article 494 of the Revised Civil Code recites: . ■.
“It is of the essence of the right of ownership that it can not exist in two persons for the whole of the same thing; but they may be the owners of the same thing in common, and each for the_ part which he may have therein.” .
A determination of whether-the heirs of U. A. Guilbeau are co-owners of the' instant real property, not having been divested of title, and are able to invoke 'the above settled law depends on the facts and surrounding circumstances of the purchase and subsequent ownership of the property; the assessment of the property; the collection of rents and royalties; the administration of the property; the billing of tax assessments ; the payment of taxes; the fiduciary relationship of the parties; and the affinity of the parties.
As stated supra, H. P. Fournet, A. V. Fleming, .and plaintiffs’ ancestor, U. A. Guilbeau, purchased the involved property. The record does not reveal any affinity among the three.parties, nor does it .reveal any design of co-ownership. Any idea that they intended to own the property in indivisión is dispelled by the individual sales of Fleming and Fournet to Gerac and Francez. We find no disclosure of any:contact with Gerac and’ Franqez by Guilbeau’á heirs after his death. We fjnd-niQ.qvidenp.e of ,recor4 showing any relationship- among Bernard Milmo, John Stokoe,,.-Harpy ,B.; Hewes and the Guilbeau Heirs, .Likewise; we find no evidence-shqwing.-iha-t;^Iilmpy *540 Stokoe & Co. considered itself the tax debtor for the Guilbeau Heirs. The one-third Guilbeau interest in the property was carried on the tax rolls as a separate unit. Up until 1889, taxes were paid separately on the one-third interest and the two-thirds interest. The tax sale of May 31, 1890 was of one-third of described property belonging to representatives of U. A. Guilbeau, and shortly thereafter Jeanerette became the owner of the entire property. There is no evidence of record that Jeanerette acted in a fiduciary capacity for the Guilbeaus; it administered the property and executed the lease with Shell Oil Company; there is neither evidence nor allegations of fraud. There is no evidence that Shell had any relationship with the Guilbeau Heirs.
We conclude that under the facts and circumstances of this case the adjudication in 1890 of the one-third Guilbeau interest in the instant property to the ancestors in title of Jeanerette divested the Guilbeau Heirs of their interest in the property and did not act as a payment of delinquent taxes, for them.
• When plaintiffs instituted this proceeding in 1963, seventy-three years had elapsed from the date of the tax sale. Jeanerette • was separate and detached from the Guilbeau Heirs. ' Under such circumstances, Shell Oil Company was an innocent third' party in its negotiations- with Jeanerette, and neither Shell Oil Company nor Jeanerette was accountable to plaintiffs.
The facts of this case are very similar to those of Boutwell v. Gunter, La.App., 185 So. 690. Therein, succession property was owned by two heirs. Walker, a mortgagee of the interest of one heir, foreclosed on that heir’s interest and purchased the other heir’s interest at tax sale. By subsequent sale, the property passed to Leon Gunter. Thereafter, an action was brought to recover the interest purchased by Walker at tax sale. The Court appropriately stated:
“In June, the remaining one-half interest in the property which was assessed to Arthur Boutwell was sold at a tax sale. Walker had no interest whatsoever in the property which was offered for sale. The taxes on his interest in the property had been fully paid some three months in advance of the sale. His motive in purchasing the property could not have been to protect an interest held by him in the property, as he had none. 'His purchase of the property can no more be said to have been made for the benefit of the plaintiff than the purchase of property sold for taxes by the owner of the land next adjoining.
“We are convinced that, in order to invoke the doctrine relied upon by plaintiff [co-owner], it must be clearly shown that the' purchaser was a part owner of the property offered for 'sale and is *542 therefore a delinquent tax debtor, as regards that specific property. * * * ”
This reasoning applies to the instant tax sale of May 31, 1890; Boutwell v. Gunter, supra, is therefore apposite.
For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, is affirmed. All costs to be paid by plaintiffs.
McCALEB, J., concurs in the result.
SUMMERS, J., takes no part.

. NE14 of the NE%. of Section 9, of the S% and the S]/2 of the SW14 of Section 10, and the NE}4 of the ISTWlé and the SE14 of Section 15, T-Í4-S, R-12-E.

. The trial court in its reasons for judgment stated:
“ * * * Milmo, Stokoe and Company were not co-owners with the Guilbeaus of the property which was sold at the IS90 tax sale. The property sold at 1jhe tax sale was nothing more or less than the Vs interest in the land which had been separately assessed to Guilbeau and now claimed by plaintiffs. That Vs interest was the whole property assessed under that assessment and Milmo, Stokoe and Company owned no interest therein. The % interest in the land owned by Milmo, Stokoe and Company was assessed to Milmo, Stokoe and Company and the taxes paid thereon. The only property which was tax-delinquent was the % interest assessed to Guilbeau.
“The distinguishing characteristics of this case begin with the separate and distinct assessment of the Milmo, Stokoe in-est from the Guilbeau interest. * * The interest of Milmo, Stokoe and Company, in the amount of % is assessed on pages 102 and 103 of the assessment roll and the assessment of the Guilbeau inter-, est in the amount of Ys, is shown' on pages 39 and 40 of the assessment roll. The tax - officials of the parish gave separate treatment to the two' interests, properly -treating them as two entirely different properties. The fact that the , assessments are sixty pages apart on the rolls further emphasizes the distinction between the two properties. The taxes due. on the property of Milmo, Stokoe and Company were paid. The taxes on the Guilbeau property were not paid. Ultimately the Guilbeau property was offered for tax sale.” - ,

. The trial court stated so clearly: “The property sold at tax sale was the % interest of U. A. Guilbeau. No on else had any right, title or interest in the Guilbeau % of the property. Since Milmo, Stokoe and Company owned no 'part of the Guilbeau property which it purchased for taxes, then Milmo, Stokoe •and Company and the Guilbeaus were not co-owners as regards the Guilbeau % interest. With separate assessments and separate handling of the two properties, the Guilbeaus were separately responsible for the payment of the taxes on their property. When they failed to pay those taxes, their property, and nobody else’s, was offered for salé for taxes. Under such circumstances, anyone in the world, including Milmo, Stokoe and Company", could buy it at tax sale unaffected by any residual equities.”

. “On tlie trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.
“When the peremptory exception is pleaded in the trial court after the trial of the ease, but prior to a submission ■for a decision, the plaintiff may introduce evidence in opposition thereto, but the defendant may introduce no evidence except to rebut that offered by plaintiff.
“No evidence may be introduced at any time to support or controvert the objection that the petition fails to -state a cause of action.” .