**William GIVENS, Jr., et al., Appellants,**

**v.**

**Herbert J. GIVENS, Appellee.**

Court of Appeals of Kentucky.

March 5, 1965.

Robert R. R. Boone, Pineville, for appellants.

William S. Tribell, Middlesboro, for appellee.

CLAY, Commissioner.

This is a suit for a declaration of rights, the principal objective of which was to have declared void a long term coal lease appellee obtained from his mother. The Chancellor adjudged the lease valid. Appellants contend this was error, and in the alternative contend that the lease, if valid, should inure to their benefit.

In 1948 W. M. Givens deeded the real estate involved to his wife, Willa Givens, and the deed provided in part:

> "To have and to hold to her in during her natural life, then the lands of whatever the parties have not transferred shall belong to the heirs of the party of the second part * * *."

The grantor had in 1937 conveyed the same property to his wife under somewhat similar terms, but the parties claim their rights under the last deed from which we have quoted. The grantee life tenant, Willa Givens, is dead and the appellants and appellee are her heirs and now own as cotenants the fee in the property.

The parties agree that Willa Givens had a life estate with a power to encroach upon the corpus. Nine days before her death she executed a coal mining lease to appellee, her son. This lease had a term of 40 years.

■ Appellants' first contention is that a life tenant has no authority to execute a lease for a term longer than her lifetime. This is the accepted general rule. 31 C.J.S. Estates § 54, p. 115; Pikeville Oil & Tire Company v. Deavors, Ky., 320 S.W.2d 782, 785. It is also recognized that a life tenant can make no oil and gas lease. Summers Oil and Gas, Permanent Edition, Vol. 2, section 223 (page 70); Union Gas & Oil Co. v. Wiedemann Oil Co., 211 Ky. 361, 277 S.W. 323; Rowe v. Bird, Ky., 304 S.W.2d 775. Since the reason for the rule is that this would permit the life tenant to deplete or waste the estate of the remaindermen, the same principle would apply to a coal lease. This seems to be recognized by KRS 353.300, which provides for the appointment of a trustee to execute an oil, gas, coal or other mineral lease where present and future interests are involved.

■ It is the position of the appellee that the right of the life tenant to encroach upon the corpus authorized her to execute a long term mineral lease. The argument is that if the life tenant could convey the property, she could lease it. There is merit in this argument. The only authority we have been able to discover on the point is Holland v. Bogardus-Hill Drug Co., 314 Mo. 214, 284 S.W. 121. Therein the court upheld a lease of business property which extended beyond the lifetime of the life tenant who had a power of disposition. Even though the lease in the present case is of a different kind and will result in the depletion of the estate of the remaindermen, it seems that the life tenant's power to encroach (which is admitted) would authorize her to transfer in this manner an interest in the devised property. We so decide. It may be observed that the remaindermen will benefit from this lease.

Appellee relied upon a judgment in another case involving leases executed by both the grantor and the life tenant, in which suit appellants and appellee were parties. We do not think the matter is res adjudicata because the judgment did not decide the question we have here or involve the same lease. However, the result is the same on this phase of the case.

The next question is whether this lease inures to the benefit of appellee's cotenants. It is clear that after the death of the life tenant, when the remainder estates matured into a fee simple and the coremaindermen had become cotenants, appellee could not have acquired an outstanding interest against the property for his exclusive benefit. The accepted principle is thus stated in 54 A.L.R. 874, at page 875:

"Tenants in common and joint tenants are said to stand in confidential relations to each other in respect to their interests in the common property and the common title under which they hold; and the courts generally assert that it would be inequitable to permit one, without the consent of the others, to buy in an outstanding adversary claim to the common estate and assert it for his exclusive benefit to the injury or prejudice of his co-owners; and, if one cotenant actually does acquire such claim, he is regarded as holding it in trust for the benefit of all his cotenants, in proportion to their respective interests in the common property, who seasonably contribute their share of his necessary expenditures; the courts will not, ordinarily, permit one cotenant to acquire and set up for his exclusive benefit any claim adverse to the common rights; at least, where all the cotenants derive title from a common ancestor by descent, or from a common grantor by a single conveyance."

See also Thompson on Real Property (1961), section 1801, page 136, specifying the fiduciary duties of cotenants.

■ That rule is not specifically applicable here because appellee acquired his interest *prior* to the time the cotenancy relationship came into being. As a general rule the fiduciary duties of joint tenants or tenants in common [1] are coextensive with the cotenancy. Sneed's Heirs v. Atherton, 6 Dana 276, 32 Am.Dec. 70; Ford v. Jellico Grocery Co., 194 Ky. 552, 240 S.W. 65; 54 A.L.R. 884.

As we have before noted, at the time appellee acquired this lease from his mother, the life tenant, she had a power of disposition of the corpus of the property. At that time appellants and appellee were not cotenants (because lacking the right to possession). They were, however, jointly vested with a defeasible· remainder. Restatement of the Law, Vol. 2, section 157 (page 54). It could be argued that when the life tenant executed the lease she thereby reduced appellants' remainder interest and they had no right in the benefits which subsequently accrued to appellee by virtue of this lease. (Those benefits consisted of profits accruing from a sublease of the property.)

■ Our problem is whether a fiduciary relationship exists between *coremaindermen* similar to that existing between *cotenants*. We think it does. Though there is lacking a unity of possession, there is a unity of title created by a single deed vesting equal remainder interests in appellants and appellee. As in the case of joint tenants or tenants in common, public policy dictates that a remainderman shall not impair the title or interests of his coremaindermen. As said in Thompson on Real Property (1961), Vol. 4A, section 2001 (page 525):

"Most cases hold that coremaindermen like cotenants of possessory estates have a fiduciary relationship so that if one acquires an outstanding interest he acquires it for all."

Cases supporting that statement are Clark v. Lindsey, 47 Ohio St. 437, 25 N.E. 422, 9 L.R.A. 740; Harrison v. Harrison, 56 Miss. 174; Wilson v. Linder, 21 Idaho 576, 123 P. 487, 42 L.R.A.,N.S., 242.

1. A distinction is recognized between "joint tenants" and "tenants in common" for some purposes, but the fiduciary duties are the same. See 48 C.J.S. Joint Tenancy § 11, p. 933; 86 C.J.S. Tenancy in Common § 17, p. 376; Thompson on Real Property (1961), section 1801 (page 136).

There are cases which apparently take a contrary view. Jinkiaway v. Ford, 93 Kan. 797, 145 P. 885, L.R.A.1915E, 343; Crawford v. Meis, 123 Iowa 610, 99 N.W. 186, 66 L.R.A. 154.

 This case points up the necessity for recognizing a fiduciary relationship between coremaindermen. Here appellee acquired from the life tenant, nine days before her death, a long term lease which affected the remainder interests of appellants and from which appellee has and will realize substantial benefits. The unity of title as remaindermen and the family relationship make it inequitable for appellee to obtain this advantage, against those who are now his cotenants, by so dealing with the property in which they had, since the execution of the original deed, a common interest. We hold that the benefits of this lease inure to the benefit of appellants as well as to appellee. Of course appellee is entitled to contribution for their rateable share of appellee's expenditures, if any, in the acquisition and exploitation of this lease. 48 C.J.S. Joint Tenancy § 11, p. 933; 98 A.L.R. 865.

The judgment is affirmed in part and reversed in part, with directions to modify the judgment consistent with this opinion.