Irwin C. GLASER, Plaintiff-Appellant,

v.

TEXON ENERGY CORPORATION, Defendant-Appellee.

No. 82–2210.

United States Court of Appeals, Fifth Circuit.

April 11, 1983.

Michael F. Linz, Dallas, Tex., for plaintiff-appellant.

Harvey F. Cohen, Houston, Tex., for defendant-appellee.

Before GOLDBERG, GEE and RANDALL, Circuit Judges.

PER CURIAM:

The plaintiff, Irwin C. Glaser, appeals the district court's take-nothing judgment in this action to compel the defendant, Texon Energy Corporation, to issue 10,000 shares of common stock to him. We affirm.

The plaintiff maintains that he originally owned 100,000 shares of common stock of Delta Oil Company, a predecessor of Texon, and that he sold 90,000 of his Delta shares over a period of several years, retaining 10,000 shares. In 1979, the plaintiff reported to Texon that he had lost the certificates evidencing the remaining 10,000 shares of Delta common stock (apparently in 1958), and he asked Texon to issue replacement certificates evidencing his ownership of the 10,000 shares of Texon common stock into which the Delta shares had been converted. The plaintiff delivered to the defendant's transfer agent an affidavit of loss and indemnity agreement, as well as a bond. The plaintiff stated in the affidavit that he did not know the numbers of the lost certificates.

On March 4, 1980, the defendant sent a letter to the plaintiff, explaining that its stock transfer records indicated that all Delta shares and certificates issued to him had been canceled many years ago. The defendant asked the plaintiff to provide further information if he wished to pursue the matter, including:

> how [he] acquired [his] Delta shares, the number of shares acquired, the purchase price thereof, the name and address of the broker used, the certificate numbers of the shares so purchased, [his] address at the time of said purchase, the type of funds used in said purchase and bank check number, if any, and a description of the circumstances surrounding [his] misplacement or loss of the certificates in question, and the date of said loss or misplacement.

The plaintiff did not reply to this letter.

The plaintiff subsequently brought this diversity action seeking to compel the de-fendant to issue 10,000 shares of Texon common stock to him.[1] The defendant denied that the plaintiff owned any Texon common stock, and further claimed the affirmative defenses of laches and failure to comply with the statutory requirements of Texas Bus. & Com.Code § 8.405 (Vernon 1968).

The case was tried before a jury. In answer to special interrogatories, the jury found that the plaintiff was the owner of 10,000 shares of common stock of Delta Oil Company, that he had not delayed unreasonably in pursuing his claim for the lost shares, and that Texon's request for information regarding the allegedly lost shares of stock was not unreasonable. The parties stipulated that the plaintiff never answered the defendant's request for information concerning his allegedly lost shares of stock.

The district court concluded, on the basis of the jury's answers to the interrogatories, that the plaintiff had failed to comply with the defendant's reasonable request for additional information, and that therefore he had failed to satisfy the requirements of section 8.405(b) of the Texas Business and Commerce Code. Viewing compliance with the statute as mandatory, the court entered a final judgment that the plaintiff take nothing by his cause of action against the defendant. The plaintiff timely appealed.

On appeal, the plaintiff maintains that he did comply with section 8.405(b). He argues further that failure to comply with the statute should not preclude him from compelling Texon to issue certificates evidencing his ownership of 10,000 shares of stock. He emphasizes that the jury found that he was the owner of these shares and that a corporation must "deliver certificates representing all shares to which shareholders are entitled." Tex.Bus.Corp.Act Ann. art. 2.19 (Vernon 1980). While the jury made no finding with respect to the plaintiff's compliance with the statute,[2] the dis-

---

1. The plaintiff's complaint also included a claim for damages.

2. Where a case is submitted to a jury on the basis of special interrogatories, Fed.R.Civ.P. 49(a) provides in relevant part:

trict court found that the plaintiff had not complied with the statute. Since the jury had determined that the defendant's request for additional information was not unreasonable, and the plaintiff admitted that he had never answered this request, the district court concluded that the plaintiff had not complied with section 8.405(b)(3). We cannot say that this conclusion was incorrect.

Section 8.405, which was modeled after section 8–405 of the Uniform Commercial Code, provides a mechanism by which a shareholder can obtain a new certificate to replace a security that has been lost, destroyed or stolen. Section 8.405(a) establishes the procedure for replacement where an issuer has already registered a transfer of the security before receiving notification of the loss;[3] section 8.405(b) establishes the procedure for situations in which no such transfer has occurred. The parties agree that this case is controlled by section 8.405(b), which provides:

> Where the owner of a security claims that the security has been lost, destroyed or wrongfully taken, the issuer must issue a new security in place of the original security if the owner
>
> (1) so requests before the issuer has notice that the security has been acquired by a bona fide purchaser; and
>
> (2) files with the issuer a sufficient indemnity bond; and
>
> (3) satisfies any other reasonable requirements imposed by the issuer.

Tex.Bus. & Com.Code Ann. § 8.405(b) (Vernon 1968). The only requirement that the defendant claims the plaintiff has not satisfied is the request for information imposed by Texon pursuant to section 8.405(b)(3).

We are not aware of any federal or state decision that specifically addresses the question whether failure to comply with section 8.405(b) precludes a stockholder from compelling an issuer to give him a new certificate. The Texas courts have held that failure to satisfy the requirements of section 8.405(a) does preclude a stockholder "from taking any action against the issuer." *Exxon Corp. v. Raetzer,* 533 S.W.2d 842, 849 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); *see also Ibanez v. Farmers Underwriters Association,* 14 Cal.3d 390, 534 P.2d 1336, 121 Cal.Rptr. 256 (1975); *Scott v. Ametek, Inc.,* 277 A.2d 714 (Del.Ch.1971); *accord, Arizona Public Service Co. v. Gammons,* 21 Ariz.App. 400, 519 P.2d 1165 (1974); *Mazer v. Williams Brothers Co.,* 461 Pa. 587, 337 A.2d 559 (1975).

The plaintiff points out that section 8.405(a) specifically states that the shareholder is "precluded" from asserting a claim if he does not comply with the statute, but section 8.405(b) does not contain this mandatory language. The plaintiff maintains that the official comments accompanying section 8.405(b) demonstrate that it is only one means of obtaining a certificate for a lost security from the issuer. He notes that these comments state that "a court order is no longer necessary but, of course, the court may compel a recalcitrant issuer to take action." U.C.C. § 8–405 comment 2 (1962). The same comments cited by the plaintiff also explain, however, that the "longstanding corporate practice of *voluntarily* issuing new securities to replace lost, destroyed or stolen ones is now incorporated into law." *Id.* (emphasis added). Further, the comments suggest that relief will be forthcoming only where reasonable requirements are

---

If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding . . . .

**3.** Section 8.405(a) provides:

Where a security has been lost, apparently destroyed or wrongfully taken and the owner fails to notify the issuer of that fact within a reasonable time after he has notice of it and the issuer registers a transfer of the security before receiving such a notification, the owner is precluded from asserting against the issuer any claim for registering the transfer under the preceding section or any claim to a new security under this section.

Tex.Bus. & Com.Code Ann. § 8.405(a) (Vernon 1968).

satisfied. Section 8.405(b) itself provides that an issuer *must* issue a new security if the owner complies with the three requirements in the statute. Since the statute compels the issuer to issue the certificate only if the shareholder has satisfied the statutory requirements, an issuer presumably may not be compelled to issue a certificate where a shareholder has failed to follow the statutory procedure.

 In light of the official explanation that section 8.405(b) incorporated into law the longstanding corporate practice of voluntarily reissuing certificates where a shareholder had satisfied certain reasonable requirements, and the assurance of court-ordered relief only "where reasonable requirements [have been] satisfied and a sufficient indemnity bond supplied," we agree with the district court that a shareholder cannot compel an issuer to give him a new certificate unless he has complied with all three requirements of section 8.405(b). This holding is in accordance with the tendency of the state courts to insist on strict compliance with the Code. *See Exxon, supra; First National Bank v. Dyers,* 638 S.W.2d 957 (Tex.Ct.App.—Eastland 1982, no writ).

We note further that there are strong policy reasons for the court to insist on compliance with the Code before it will compel an issuer to issue a new certificate. As the defendant points out, an indemnity bond alone may be inadequate protection for an issuer. For example, Texon points out that without the certificate numbers of the plaintiff's stock, Texon would have a difficult time recovering on the indemnity bond. Further, if the certificates were registered in street name, they could be presented for transfer—indeed, they may have already been so—and Texon would have no way of knowing that they were the certificates allegedly lost by Glaser. In that event, Texon could easily find itself in the position of overissuing shares in contravention of Tex.Bus.Corp.Act Ann. arts. 2.12–2.16 (Vernon 1980).

The district court's entry of a take-nothing judgment is affirmed. The plaintiff shall bear the costs of this appeal.

AFFIRMED.